**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GREGORY GARRETT BROWN,**     **Plaintiff** ) ) ) vs. ) ) **SUE HERBSTRITT,** )     **Defendant.** ) | **C.A. No. 04-95 Erie
District Judge McLaughlin
Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. REPORT**

It is respectfully recommended that Defendant's motion for summary judgment [Document # 23] be granted.

**II. RECOMMENDATION**

 **A. Introduction**

Plaintiff Gregory Garrett Brown, presently incarcerated at the Warren State Hospital, brings this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff claims that while he was incarcerated at the Erie County Prison Defendant Nurse Herbstritt denied him his prescribed medication thereby violating his Eighth and Fourteenth Amendment rights. As relief, Plaintiff requests monetary compensation.

 In his complaint, Plaintiff alleges, in entirety:

 1) In October of 2003, Nurse Sue Herbstritt deprived me of my prescribed medication that was ordered by the doctor in October of 2003.

 2) I was receiving one multi-vitamin a day for my weakness and tiredness.

 3) On that day in October, 2003, I informed Nurse Sue that the official (unintelligible) told me to tell the nurse that comes at night that I didn't get my vitamin in the morning due to the fact that I was away from the pod at the time medication came in the morning.

 4) When I informed Nurse Sue that I never got my meds, and, that the officer

    on first shift told me to let the nurse know, Nurse Sue said, "It's only a vitamin, you can wait until tomorrow to get it, missing one day isn't going to kill you."

5) I told Nurse Sue that I needed the vitamin because I feel weak and tired and, she said, "I'm not giving it to you, wait until tomorrow like I said."

6) I was weak and tired all night and, I had trouble sleeping that night.

7) In the months of January 2004, the 15th day, Nurse Sue Herbstritt deprived me of my prescribed medication that the doctor ordered in January of 2004.

8) I was receiving 600 mg of Motrin for pain.

9) On that day in January of 2004, Nurse Sue gave me 400 milligrams of Motrin.

10) I informed Nurse Sue that I get 600 milligrams of Motrin and, she said "I know but, I'm giving you 400 milligrams and, if you don't like it, don't take it."

11) I told Nurse Sue that I got 600 milligrams in the morning from the nurse and, that's what I am suppose to get at night according to doctor's orders.

12) Nurse Sue said, "If you keep arguing with me, I'm going to have the officer write up a misconduct report against you."

13) To avoid any further incident, I walked away and, I filed a grievance about the matter.

14) According to the Erie County Inmate Handbook, page 32 and 33, rights, you have a right to: "Be treated impartially and justly." and, you have the right to: "Have access to health care."

15) Nurse Sue Herbstritt has violated my rights under both the United States and PA. Constitutions.

16) The case is eminent [sic] due to the fact that the nurse is still depriving me of my meds from time to time out of retaliation.

Document # 3.[1]

---

[1] During a telephonic hearing on a motion for temporary restraining order held on August 25, 2004, Plaintiff's allegations became much more clear. All of the "medication" which Plaintiff avers is being withheld from him as the basis of this complaint is a multi-vitamin, an ibuprofen and an "Ensure" milkshake. During the hearing, Plaintiff acknowledged that he is receiving these things. Instead, Plaintiff bases his claim against Defendant on the fact that he is receiving these medications from the hands of a correctional officer instead of from the hands of Defendant Herbstritt herself. This Court notes that at the time of the hearing, Plaintiff

Presently before this Court is Defendant's motion for summary judgment. Plaintiff has not filed an Opposition Brief.

### B. The Standards of Review

#### 1. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

#### 2. Motion for summary judgment pursuant to Fed.R.Civ.P. 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

had been charged with the crime of Terroristic Threats against Multiple sclerosis. Herbstritt and was awaiting trial in Court of Common Pleas of Erie County.

3

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court

4

must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### C. The Exhaustion Requirement of the Prison Litigation Reform Act

Defendant argues that the case should be dismissed because Plaintiff has failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirements that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Thus, federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the recent Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)).

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

### D. The Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. June 18, 2004).[3] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

---

[3] There is an emerging split of authority among the Circuits on this issue. Compare Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

6

### E.  Exhaustion and Procedural Default applied

No analysis of exhaustion may be made absent an understanding of the administrative process available to inmates at the Erie County Prison. The applicable grievance procedures are set out in the Erie County Department of Corrections Inmate Grievance Procedure Policy 510.01. Prior to utilizing the grievance system, inmates are required to attempt to resolve issues on an informal basis with their housing unit staff. If the issue is not resolved with fifteen days after the event, the inmate may file a written grievance. The grievance will be answered within twenty days of its filing. If the inmate is not satisfied with the resolution, he may appeal to the Warden within five days. The Warden must reply in writing within ten days and the Warden's decision is the final level of review. Document # 23, Exhibit C.

Defendant has provided evidence that Plaintiff did not file any grievance regarding his claim that Defendant withheld his prescribed multivitamin in October of 2003. Document # 23, Exhibit C, Affidavit of Major Alan Copeland, Deputy Warden of Security. Plaintiff has not responded with evidence to the contrary. Therefore, this Court finds that Plaintiff has failed to exhaust his administrative remedies with regard to this claim.

Defendant has provided further evidence that Plaintiff did not fully exhaust his administrative remedies as to his claim that Defendant denied him the prescribed dosage of Motrin in January 2004. The evidence demonstrates that Plaintiff filed an initial grievance, but did not appeal it to the final level of review. Id. Again, Plaintiff has not responded with evidence to the contrary. Therefore, this Court finds that Plaintiff has not exhausted his administrative remedies as to this claim.

Plaintiff has failed to exhaust his administrative remedies with regard to either of his two claims and he is now procedurally barred by the policy from doing so. Under the Prison Litigation Reform Act, Plaintiff must fully exhaust his administrative remedies before a federal court can hear his claim; this he has not done. Therefore, the motion for summary judgment should be granted and this case should be dismissed.

**III.    CONCLUSION**

      For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment [Document # 23] be granted.

      In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. _____

                                                     S/ Susan Paradise Baxter
                                                     SUSAN PARADISE BAXTER
                                                     Chief United States Magistrate Judge

Dated: September 12, 2005